Lawrence H. Schultz, Jr., J.
Both of the defendants were arrested together, and each was charged with possession of instrument for administering narcotics (Public Health Law, § 3395, subd. 3), a misdemeanor. Both informations are similar in wording and allege that defendant had in his possession ‘ An instrument or implement adapted for the administering of narcotic drugs, to wit, the bowl of a briar pipe with an aluminum foil insert which contained a dark substance which emitted a sweet odor and which instrument or implement was possessed for the purpose of administering narcotic drugs, and that possession of said instrument or implement was not obtained upon a valid written prescription form authorized or directed by a duly licensed physician or veterinarian.” Defendant Gordon was the operator of an automobile, in which both defendants *541 were passengers, and he was stopped by the police for turning without signaling, a violation of subdivision (a) of section 1163 of the Vehicle and Traffic Law. Upon a search of the car by the police, the briar pipe mentioned in the information was found, and the charges before this court were brought against the two defendants.
At arraignment, both defendants pleaded “ Not Guilty.” On August 17, 1972, defendant Gordon’s attorney made a motion to dismiss the misdemeanor informations as being fatally defective as a matter of law. The attorney for defendant Plath has made no such motion to dismiss, but sought an adjournment until the motion made by the attorney for defendant Gordon has been decided. Both informations on both defendants are here considered.
It is the decision of this court that both informations, against each defendant, must be dismissed. Each information is fatally defective because it does not allege a crime under the law of the State of New York.
The pertinent provisions of subdivision 3 of section 3395 of the Public Health Law state that it shall be unlawful for any person except duly licensed physicians, dentists, hospitals, drug stores, etc. to have under his control or possession: “hypodermic syringe or hypodermic needle, or any other instrument or implement adapted for the administering of narcotic drugs which other instrument or implement is possessed for that purpose, unless such possession be obtained upon a valid written prescription, form, and such use be authorized or directed by, a duly licensed physician or veterinarian.”
The leading, and controlling case in this area is People v. Berger (61 Misc 2d 475 [Albany County Ct., 1969]). There are cases subsequent in time to the Berger case which severely criticize Berger and they will be discussed in turn. However, it is my opinion that from the point of view of legislative intent and the plain reading of the statute, that the Berger case must control and should be the law.
In the Berger case, defendant was arrested for possession of a briar pipe and upon a laboratory analysis there was found to be a residue of marijuana. As the court stated, the only issue in the case was whether this residue of marijuana changed the nature of these pipes to become an “ instrument or implement adapted for the administering of narcotic drugs ’ ’ under subdivision 3 of section 3395 of the Public Health Law. The court held as follows: “Upon analysis of subdivision 3 [Public Health Law, § 3395], I am constrained to the view that the leg *542 islative intent was directed toward instrumentalities commonly used for the administration of drugs in a manner analogous to the use of syringes, needles, etc. It is inconceivable that the Legislature intended to proscribe the use of or possession of ordinary tobacco pipes except with a prescription by a physician. To extend the Public Health Law to the point of making ordinary tobacco pipes illegal goes beyond reasonable interpretation of the law. The fact that the informations alleged ‘ marijuana residue ’ in the pipes does not of itself transform the basic nature of the pipes. The defendants might have been charged with possession of marijuana under the Penal Law if such were the case. Such possession could conceivably have been proven through the aforesaid 1 marijuana residue ’ element.” (People v. Berger, supra, p. 474.)
It would clearly seem from the reading of the statute, and the section, a portion of which is quoted hereinabove, that the intent of the Legislature was to prohibit the use of hypodermic needles or syringes, or other such or kindred instruments which have to be acquired by a prescription and which can be used or adapted for narcotic administration. Clearly, if it is illegal to smoke marijuana as a cigafette, it should certainly be illegal to smoke marijuana with a pipe. However, to contrive a statute which makes criminal the possession of a hypodermic needle to the possession of a briar pipe would be to abuse statutory construction.
The 1972 session of the Legislature adopted chapter 878 of the Laws of 1972, which amended the Public Health Law and repealed articles 33, 33-A and 33-B of said Public Health Law, such repeal to become effective on April 1, 1973. Under the statute’s derivation table, former section 3395 of the Public Health Law becomes section 3381. In this new section regarding “ Sale and possession of hypodermic syringes and hypodermic needles ”, it specifically mentions only these two types of instruments and no other similar instrument, or ‘ ‘ implement adapted for the administering of narcotic drugs ” which appeared in the present statute. It would thus appear that the Legislature intended to correct any ambiguity and to specifically limit the effect of the new Public Health Law to syringes and needles.
In People v. Schoonmaker (65 Misc 2d 393 [Greene County Ct., 1971]) the Berger case was followed, although it was not relied upon in reversing a lower court’s conviction. Subsequently, People v. Queen (66 Misc 2d 616 [Dutchess County Ct., 1971]) was decided and criticized the holding in the Berger case. *543 The court felt that to narrowly limit the use of the Public Health Law to hypodermic syringes, and not to “ water pipes ” would be to defeat legislative intent. Following this came People v. Landon (68 Misc 2d 809 [Cortland County Ct., 1971]); the Berger case was severely criticized as not being the law and that furthermore the adaption of an ordinary smoking pipe shonld be a question for the trier of the facts and not a question of law.
I do feel, from a reading of the cases cited herein, that Berger must stand as the law. It is my belief that criminal statutes are to be narrowly construed. I further agree with the court in the Berger case that “ The section specifically refers to hypodermic syringes and hypodermic needles before continuing with the general reference to implements adapted for administering narcotics.” (People v. Berger, supra, p. 476.) This is my understanding of the rules of statutory construction, that when a statute speaks of a specific thing and proceeds to a more general classification, that the latter must be of a similar nature to the former. This is the rule of ejusdem generis. (See 56 N. Y. Jur., Statutes, § 130, and cases there cited.)
Upon the law, as interpreted by the Berger case, I do therefore find that both informations, against both defendants, are fatally defective on the basis that they do not allege a crime. Both defendants, to the extent that they are charged under subdivision 3 of section 3395 of the Public Health Law, are discharged and the informations are dismissed.